[No. 64.  Decided February 11, 1891.]

## EBEN PIERCE v. JAMES A. FRACE.

PUBLIC LANDS — PRE-EMPTION — CANCELLATION OF ENTRY — EJECT-
MENT.

Under the laws of this state the holder of a final receipt for entry
upon public lands, which is in force and uncanceled, may main-
tain an action of ejectment to protect his possession thereunder.

Until the issuance of patent for an entry under the pre-emption
laws of the United States, the commissioner of the general land
office may suspend the entry, and order a re-examination as to the
pre-emption claimant's residence upon and improvement of the
land for which he holds the final receipt of the register and re-
ceiver, and if, on said re-examination, it is shown that the claimant
has not complied with the law, the commissioner of the general
land office has power to cancel the entry.  (DUNBAR, J., dissents.)

*Error to Superior Court, Pierce County.*

The facts are fully stated in the opinion.

*Doolittle, Pritchard & Stevens,* for plaintiff in error.

It seems plain, upon a fair construction of the United
States Statutes—(1) That the register and receiver have
been constituted by law the tribunal to hear and determine
all questions relating to the settlement and improvement of
pre-emption claims, and there is no reservation of power
upon these questions to any of the higher officers of the
land department, and the only restriction upon the power
and authority of the register and receiver is, that they shall
hear and determine these questions agreeably to such rules
as may be prescribed by the secretary of the interior.
Rev. St. U. S., § 2263.

(2) That there is no appeal from this decision of the
register and receiver upon these questions except in cases
where questions arise between different settlers upon the
same land, which questions are to be determined by the

6—2 WASH.

register and receiver, and then the appeal lies from such decision to the commissioner of the general land office, and from him to the secretary of the interior. Rev. St. U. S., § 2273; *Wilcox v. Jackson*, 13 Pet. 498–511; *Lytle v. Arkansas*, 9 How. 314–328.

In the matter of sales of public land, the courts have viewed the transaction precisely like that of a sale between two private individuals. The government is regarded as a vendor and the pre-emptor as a purchaser, and when the contract has been completely executed by the payment of the full amount of the purchase price, it has been universally held that a vested right existed in favor of the pre-emptor, and that the contract had assumed such a character that it could not be rescinded arbitrarily by the government. *Carroll v. Safford*, 3 How. 441–460.

In some of the earlier cases, the supreme court seems to have attached paramount importance to the fact that the *legal title* remains in the United States until the execution and delivery of the patent, but the later and better doctrine is that although the naked legal title may be held to technically remain vested in the United States until the execution and delivery of the patent, yet upon the consummation of the sale, and its complete execution by the payment of the purchase price on the one hand and the delivery of the final 'receipt or patent certificate on the other, a complete equitable title vests in the purchaser, which is substantially equivalent to the patent, and which is sufficient to overcome a patent which may have been subsequently issued to another claimant. *Witherspoon v. Duncan*, 4 Wall. 210; *Simmons v. Wagner*, 101 U. S. 260; *Cornelius v. Kessel*, 128 U. S. 457; *Smith v. Ewing*, 11 Sawy. 56 (23 Fed. Rep. 741); *Wilson v. Fine*, 40 Fed. Rep. 52.

The courts are bound, of course, and it is their province to set aside any judgment or decision or any contract founded upon fraud, and we think the decision of Judge

DEADY is correct, that the executive officers of the government should not be allowed, in any case, unless clearly authorized by statute, to annul or set aside vested rights, but that the government should be required, like an individual under like circumstances, to resort to the courts to have a judicial determination of questions of this character. *Camp v. Smith,* 2 Minn. 155.

As fully sustaining the position we contend for, at least to the extent required for the purposes of the case at bar, we cite the following additional authorities: *Perry v. O'Hanlon,* 11 Mo. 585 (49 Am. Dec. 100); *Brill v. Stiles,* 35 Ill. 309 (85 Am. Dec. 364); *Cady v. Eighmey,* 54 Iowa, 615; *Arnold v. Grimes,* 2 Iowa, 1; *Sillyman v. King,* 36 Iowa, 207; *Moyer v. McCullough,* 1 Ind. 339; *Aldrich v. Aldrich,* 37 Ill. 32; *Morton v. Blankenship,* 5 Mo. 346; *O'Brien v. Perry,* 28 Mo. 500; *Cornelius v. Kessel,* 58 Wis. 237; *Boyce v. Danz,* 29 Mich. 146; *Streeter v. Rolph,* 13 Neb. 388; *Baty v. Sale,* 43 Ill. 354 (92 Am. Dec. 128).

The statutes of the United States provide for contests in homestead cases, in timber culture cases, in mineral land cases, in desert land cases and in pre-emption cases. The only contest provided for in pre-emption cases is under § 2273 of the revised statutes, and it is there provided that these contests as to pre-emption claims must be between two or more persons, who have settled on the same tract of land. No mere stranger can initiate a contest, and the land department itself seems to have so considered the law, when the question has been brought before it, at least until very recently. *Kort v. Helton,* Dec. Sec'y Interior, Jan. 15, 1881; *Milam v. Favrow,* 8 Copp's Land Owner, 93.

Under the old rule which prevailed in ejectment cases, of course the plaintiff could not recover in this form of action upon an equitable title, and hence it was necessary for him to exhibit a patent in support of his chain of title in order to make out the legal title, which was required of him; but

under our statute (code 1881, § 538) this rule has been changed, and our right to maintain the action upon the equitable title, which we maintain is fully supported by the authorities heretofore cited; indeed, many of the cases cited by the defendant fully support us in this position. *Marquez v. Frisbie,* 101 U. S. 473; *Dickinson v. Brown,* 9 Smedes & M. 130; *Simmons v. Wagner,* 101 U. S. 260.

*Judson, Sharpstein & Sullivan,* for defendant in error.

The provisions of the Revised Statutes of the United States (§§ 158, 441, 453, 456, 458, 459, 2478, 2257–63) indicate clearly that when a person has complied with the conditions prescribed by law that he is to make proof of this fact to the satisfaction of the register and receiver in the first instance, but that their conclusion is not final but subject to the supervision of the commissioner of the general land office. The determination of the commissioner is judicial in its character. If he decides that the patent should issue he prepares the patent for execution, and thereupon it is signed by the president and countersigned by the recorder of the general land office and recorded. When this last act is completed, and not till then, the authority of the land department over the land named in the patent ceases. The patent is the only evidence of title which is authorized by Congress. The very essence of sovereignty lies in its non-liability to be sued. And the fact that the decisions from which we shall presently quote deny the rights of the courts to compel the commissioner of the general land office to issue a patent, necessarily determines as matter of law that the land department has the exclusive jurisdiction of the public lands and of their control and disposition. *Bagnell v. Broderick,* 13 Pet. 436; *Wilcox v. Jackson,* 13 Pet. 498; *United States v. Commissioner,* 5 Wall. 563; *Gaines v. Thompson,* 7 Wall. 347; *Hosmer v. Wallace,* 47 Cal. 461 (affirmed in 97 U. S. 575); *United*

*States v. Jones,* 131 U. S. 1; *Marquez v. Frisbie,* 101 U. S. 473; *Litchfield v. Register and Receiver,* 9 Wall. 575; *Secretary v. McGarrahan,* 9 Wall. 298; *Dickinson v. Brown,* 9 Smedes & M. 130; *Hays v. Parker,* 2 Wash. T. 198.

We assert as a proposition of law: That until the issuance of patent the commissioner of the general land office may suspend an entry and place the pre-emption claimant in the same position that he was prior to the offering of proof; and that on said second hearing the government can itself, through its officers and agents, or by the efforts of an informer, re-examine the question as to the pre-emption claimant's compliance with the law, and if on said hearing it is shown that the claimant has not complied with the law, that the commissioner of the general land office may cancel the entry and allow any person to file a declaratory statement for the same, and, after compliance with the law, permit him to enter it. *Frisbie v. Whitney,* 9 Wall. 187; *Harkness v. Underhill,* 1 Black, 316; *Barnard's Heirs v. Ashley's Heirs,* 18 How. 43; *Hestres v. Brennan,* 50 Cal. 211; *Randall v. Edert,* 7 Minn. 450; *Gray v. Stockton,* 8 Minn. 529; *Judd v. Randall,* 36 Minn. 12 (29 N. W. Rep. 589); *Darcy v. McCarthy,* 35 Kan. 722 (12 Pac. Rep. 104); *Morton v. Green,* 2 Neb. 441; *Forbes v. Driscoll,* Dak. Feb. 1887 (31 N. W. Rep. 633); *Bellows v. Todd,* 34 Iowa, 18; *Gray v. McCance,* 14 Ill. 343; *McLane v. Bovee,* 35 Wis. 27; *Figg v. Hensley,* 52 Cal. 299; *Shepley v. Cowan,* 91 U. S. 330; *Moore v. Robbins,* 96 U. S. 530; *Quinby v. Conlan,* 104 U. S. 420; *United States v. Minor,* 114 U. S. 233; *Lee v. Johnson,* 116 U. S. 48; *Porter v. Bishop,* Fla. Dec. 1889 (6 So. Rep. 863); *United States v. King,* 9 Mont. 75 (22 Pac. Rep. 498); *Vantongeren v. Heffernan,* 5 Dak. 180 (38 N. W. Rep. 52–97).

The opinion of the court was delivered by

HOYT, J. — Plaintiff in error filed his complaint in eject-

ment and sought to recover possession of certain land
therein described.    Defendant in error answered, denying
the allegations of the complaint and alleging as an equi-
table defense facts substantially as follows :

On December 20, 1880, the plaintiff in error filed his
declaratory statement for the premises in controversy under
the pre-emption laws of the United States.    On February
13, 1883, he made final proof to the satisfaction of the
register and receiver of the United States land office at
Olympia, and on March 12, 1883, his cash entry was al-
lowed by the register and receiver and a final receipt issued
to him; that on August 7, 1883, and while the final proof
of plaintiff in error was in the hands of the commissioner
of the general land office, defendant in error filed with said
commissioner his corroborated affidavit in which he alleged
that plaintiff in error "had at no time established his resi-
dence on said land, and that he had failed to improve and
cultivate the same as required by law, and that the said
cash entry had been procured by fraud."    The commis-
sioner, on the 16th day of May, 1885, suspended the entry
and ordered a hearing to be had before the register and
receiver, touching the charges made by defendant in error
in said affidavits.    On July 13, 1885, said hearing was
had, at which plaintiff in error appeared with his wit-
nesses, as did also the defendant in error.    The evidence
was taken, and after argument the register and receiver
found that plaintiff in error "at no time established his resi-
dence on the land embraced in his said cash entry; that he
failed to cultivate and improve said land as required by
law;" and they, therefore, advised that said cash entry be
canceled.    Plaintiff in error thereupon took an appeal
from the decision of the register and receiver to the com-
missioner of the general land office, and on June 3, 1886,
the commissioner affirmed said decision and ordered plaint-
iff in error's cash entry to be canceled.    Again plaintiff
in error took an appeal, this time to the secretary of the
interior, and on March 31, 1888, the secretary affirmed the
decision of the commissioner of the general land office, and
thereafter canceled said plaintiff's cash entry.    Subse-
quently the defendant in error filed upon said premises
embraced in said cash entry under the homestead laws of

the United States, and thereafter made his final proof, and received from the register and receiver of the land office his patent certificate for said premises.

To this answer plaintiff in error filed a reply, in which he asserted that the proceedings of the land office after the 12th day of March, 1883, the date on which his certificate was issued, "were wholly void, for the reason that said officers had no jurisdiction whatever over the said land or the plaintiff in error," and denied that the defendant in error, in the affidavit filed by him with the commissioner of the general land office, alleged that the plaintiff in error failed to improve and cultivate said land as required by law, or that said entry of plaintiff in error had been procured by fraud. He further denied that the decision of the commissioner of the general land office was affirmed by the secretary of the interior, except as to the findings of the register and receiver and commissioner that plaintiff in error had not made his residence upon said land. Defendant in error demurred to this reply, and the ruling of the court sustaining said demurrer is relied upon as cause for the reversal of the judgment rendered thereon.

Upon this record two questions have been argued — (1) Had the court jurisdiction of the subject-matter of the action? (2) Had the officers of the land department jurisdiction to cancel the entry of plaintiff in error?

The first proposition is so largely dependent on the latter that it is necessary only to say that, if the final receipt was in force and uncanceled, it would under the laws of this state authorize the holder to maintain an action for the protection of his possession thereunder. The authorities cited are to the effect that the courts will not take jurisdiction to determine the title of adverse claimants to land until the land department is through with it and the legal title has passed from the government, and are not applicable to a case like the one at bar, where the right of pos-

session under the laws of the state is alone in question. It is true that the language of the court in the case of *Hays v. Parker*, 2 Wash. T. 198 (3 Pac. Rep. 901), seems to warrant the contention of defendant in error; but the language used must be interpreted in the light of the facts of the case, and, thus interpreted, is not inconsistent with the above stated conclusions; for, though that was an action of ejectment and the plaintiff relied upon a final receipt as in this case, yet it appeared that at the time the action was commenced the plaintiff was in the land office of the United States waging a contest with the defendant as to the validity of the right upon which his action was founded, and under these circumstances the court very properly refused to aid either party in so changing the situation as to affect, or have a tendency to affect, the contest then being waged in the land office. Under the second question above stated, the contention of the plaintiff in error is, that a patent certificate issued in due form, in favor of a pre-emptioner, for lands subject to entry under the pre-emption law, where no appeal is taken from the decision of the register and receiver in granting the same, cannot be set aside by the land department upon proceedings subsequently initiated by a stranger and upon the ground of failure to comply with the law in relation to settlement and improvement; while the defendant in error contends that until the issuance of the patent the commissioner of the general land office may suspend an entry, and place the pre-emption claimant in the same position that he was prior to the offering of proof, and that on said second hearing the government can itself, through its officers and agents or by the efforts of an informer, re-examine the question as to the pre-emption claimant's compliance with the law, and if on said hearing it is shown that the claimant has not done so, that the commissioner of the general land office may cancel the entry and allow another to file upon the land.

These contentions have been elaborately argued by counsel for the respective parties, who, by their zeal and ability, have brought together and summarized nearly all the authorities upon this subject; and the labors of the court in coming to a conclusion as to these important questions have been thereby greatly facilitated. Plaintiff in error, to maintain his contention above stated, relies upon the provisions of § 2263 of the Revised Statutes of the United States, which, he claims, constitute the register and receiver a tribunal to hear and determine all questions relating to the settlement and improvement of pre-emption claims, and that in the absence of a contest there is no appeal to the higher officers of the land department; the only exception being that they shall hear and determine these questions agreeably to such rules as may be prescribed by the secretary of the interior. The language of this section is as follows: "Prior to any entries being made under and by virtue of the provisions of § 2259, proof of the settlement and improvement thereby required shall be made to the satisfaction of the register and receiver of the land district in which such lands lie, agreeably to such rules as may be prescribed by the secretary of the interior; and all assignments and transfers of the right hereby secured, prior to the issuing of the patent, shall be null and void," and would seem to warrant such construction, though it might be contended that, under the power given to the secretary of the interior, he might provide by rules that the decision of these facts should, in the first instance, be only tentative, and that before such decision should become final the register and receiver should, when directed by the commissioner of the general land office, again pass upon the question, and so continue to do until their superior officers were satisfied with the correctness of their determination. This latter contention would, however, be an unnatural and forced one, and if said section stood alone, unqualified by

other provisions of the land law, we should have little trouble in coming to the conclusion that the contention of the plaintiff in error was correct.

This language, however, must be interpreted in the light of all the provisions of law relating to the disposition of public lands. Upon an investigation of these provisions, we find that the entire duty of supervising the disposal of such lands is vested in the secretary of the interior and the commissioner of the general land office; that such commissioner is the head of a bureau having in charge all matters relating to such lands; that the register and receiver are inferior officers in such bureau, who must make full report of all their proceedings to such commissioner, who is charged with the duty of seeing that a patent issues to persons entitled thereto. These provisions were in existence at the time of the enactment of the pre-emption law of 1841, in which was found the section above quoted from the Revised Statutes. Under such provisions it had been the constant practice of registers and receivers, not only to send up to the commissioner their finding of facts, but to send therewith all the proofs taken by and before them upon which such findings were based. This practice could only be justified upon the theory that such register and receiver were inferior officers to the commissioner, and their findings were subject to review by him. Viewing the language of the section in question in the light of the law and the practice thereunder existing at the time such section was enacted, we think it is not sufficient to show the intention of congress to overturn such law and practice, and by indirection take from the commissioner his powers of supervision, and transform the theretofore inferior officers of register and receiver into courts of final determination, by whose decisions, however erroneous, the government would be absolutely concluded. The responsibility of finally determining as to the conditions precedent to the issuing of

a patent for lands of the United States could not thus in-directly be taken from one of the higher officers of the government, acting under the immediate supervision of the president, and cast upon inferior and comparatively un-known ones, exercising their powers in places remote from the seat of government.

It is true that to hold that these findings of the register and receiver may be reviewed by the commissioner, and a rehearing ordered, may work great hardship to individuals who may thus be called upon to prove facts that they had long supposed settled by the finding of such register and receiver; but these considerations can have but little weight in construing the statutes, as courts are bound to assume that the higher officers of the land department will not act arbitrarily, and causelessly put the burden of a second hearing upon an applicant. On the other hand, to hold otherwise would place the entire interests of the govern-ment, as to these important questions, in the hands of these inferior and remote officers, who, by their careless or cor-rupt administration of the trust reposed in them, might to a great extent nullify the policy of the government as to the disposal of its lands to actual settlers and improvers only. That a policy that congress had, and since has, taken such pains to establish and carry out, should be left at the mercy of such inferior and remote officers, does not seem reasonable. The opportunities for evasions of such policy are very great, even under the most careful supervision of the highest officers of the government; and without such supervision there would · be little practical utility in all the laws enacted by congress upon that subject. The language of the section in question is susceptible of the interpretation claimed for it by plaintiff in error, but when viewed in the light of other statute law and public policy, we cannot be-lieve that such was the intention of congress.

The adjudicated cases upon this subject are quite numer-

ous, and, though there may be found in some of them expressions which seem to give force to the claim of plaintiff in error, yet we think that, when examined in the light of the facts of each particular case, they will be found to better harmonize with the contention of defendant in error. In fact, after a somewhat exhaustive research, we have been unable to find any case that fully supported the plaintiff in error's contention, or that could not be harmonized with the positions of the defendant in error, except two cases in the circuit court of the United States for the district of Oregon. *Smith v. Ewing,* 11 Sawy. 56 (23 Fed. Rep. 741); *Wilson v. Fine,* 40 Fed. Rep. 52. The long experience and great reputation for learning and ability of the judge who tried those cases is well known, and they on that account are entitled to great consideration and weight. The court which rendered these opinions was, however, an inferior one, whose decisions were subject to reversal on appeal, and its judgments are not entitled to the same weight as courts of last resort. The opinions in said cases, however, show that the most painstaking research was brought to the aid of the court in the decision thereof, and the argument therein is very strong; and did we not think that they stand alone, while on the other hand are a large number of cases tending more or less strongly in an opposite direction, we should perhaps be content to accept the argument of the learned judge who decided them, and sustain the contention of the plaintiff in error; but in the light of such other cases we are led to the belief that said decisions were founded too much upon the language of the particular sections in controversy, and that due weight was not given to other portions of the statutes relating to the disposition of public lands.

We shall not attempt a review of the cases cited from the state reports, as their number is too great to make a careful review of them all practicable. Besides, this is a

purely federal question, and, so far as the supreme court of
the United States has spoken, its decision must be taken
as final. Cases more or less conclusive upon the subject-
matter under discussion have been from time to time de-
cided by the supreme court of the United States, and to
these we must mainly look for guidance. And, first, we
may say generally that a large number of cases cited by
plaintiff in error passed upon the effect of a final receipt in
cases where the land was subject to private entry, and
where proof of any fact was not required as a prerequisite
to the purchase. In this class of cases it has often been
held that by the payment of the money to the government
the substantial title at once vested in the purchaser, and
that there was nothing further for the government to do
except to complete the sale by the conveyance of the bare
legal title. These cases, however, are only remotely appli-
cable to the case at bar. In this case, while it is true that
the government has received the money for the land, yet it
has done so upon the assurance and proof of the purchaser
that he had qualified himself under the land laws to become
such purchaser; and if such assurance and proof were false,
then the government has acted under a mistake as to the
facts, and the reasons for concluding it would not be nearly
so strong as in the former case. The settlement and im-
provement may be said to be a substantial part of the pur-
chase price for which the government consents to part
with its title. At the time the final receipt is issued it is
supposed that that part, as well as the cash part, has been
paid; but before the government has parted with its title
it is found that such part of the purchase price has not
been paid, and therefore the government asserts only the
right which a private party would have under like circum-
stances in refusing to convey the contracted premises.

We shall now briefly examine a few of the cases decided
by the supreme court of the United States bearing upon

this question. The case of *Wilcox v. Jackson,* 13 Pet. 498,
is much relied upon by plaintiff in error. In its opinion
in that case the court says: "Even assuming that the de-
cision of the register and receiver, in the absence of frauds,
would be conclusive as to the facts of the applicant then
being in possession and his cultivation during the preced-
ing year, because these questions are directly submitted to
them, yet if they undertake to grant pre-emptions in land
in which the law declares they shall not be granted, then
they are acting upon a subject-matter clearly not within
their jurisdiction;" which language is far from conclusive,
as, instead of indicating that the court had actually deter-
mined the law as thus stated, it clearly shows that it was
only an admission by way of argument. It is but fair to
say, however, that the above quoted language, when taken
in connection with the context, and of the reference therein
made to the case of *Elliott v. Peirsol,* 1 Pet. 328, 340, very
strongly supports the contention of plaintiff in error and,
if the statute law upon the subject was the same now as
when that decision was rendered, might well be cited as
nearly conclusive of the question. Such, however, is not
the case, for not only has the law been materially changed,
but the law as thus changed has received an interpretation
by the same court which, as we shall see hereafter, has de-
stroyed the force of the case under consideration. The
case of *Lytle v. State of Arkansas,* 9 How. 314, is a still
stronger one and, were it not qualified by the statement
just made, might well conclude our inquiry; for Justice
McLEAN, in the course of his opinion, says that the find-
ings of the register and receiver are final. These cases
are entitled to but little weight in determining the proper
practice under the law as it now stands. At the time the
proceedings passed upon therein were had the law pro-
vided that the fact of settlement and cultivation should be
proved to the satisfaction of the register and receiver, from

whom no appeal was given and over whose acts, in that regard, no control was given by the higher officers of the land department. At the time the proceedings were had which are under review in the case at bar, the law, as we have seen, was very different. At this time the entire responsibility as to the control and disposition of the public lands had been cast upon the commissioner of the general land office; and the effect of all these provisions would seem to be sufficient to change the ruling of the court as above set forth; and, as we read the cases, such has been their effect.

In deciding the case of *Barnard's Heirs v. Ashley's Heirs*, 18 How. 43, Mr. Justice CATRON uses the following language: "In cases arising under the pre-emption laws of the 29th of May, 1830, and of the 19th of June, 1834, the power of ascertaining and deciding on the facts which entitled a party to the right of pre-emption was vested in the register and receiver of the land district in which the land was situated, from whose decision there was no direct appeal to higher authority. But, even under these laws, the proof on which the claim was to rest was to be made, 'agreeably to the rules to be prescribed by the commissioner of the general land office,' and, if not so made, the entry would be suspended, when the proceeding was brought before the commissioner by an opposing claimant. In cases, however, like the one before us, where an entry had been allowed on *ex parte* affidavits, which were impeached, and the land claimed by another, founded upon an opposing entry, the course pursued at the general land office was to return the proofs and allegations in opposition to the entry to the district office, with instructions to call all the parties before the register and receiver, with a view of instituting an inquiry into the matters charged; allowing each party, on due notice, an opportunity of cross-examining the witnesses of the other, each being allowed

to introduce proofs; and, on the close of the investigation, the register and receiver were instructed to report the proceedings to the general land office, with their opinion as to the effect of the proof, and the case made by the additional testimony. And, on this return, the commissioner does in fact exercise a supervision over the acts of the register and receiver. This power of revision is exercised by virtue of the act of July 4, 1836, § 1, which provides 'that, from and after the passage of this act, the executive duties now prescribed, or which may hereafter be prescribed, by law, appertaining to the surveying and sale of the public lands of the United States, or in any wise respecting such public lands, and also such as relate to private claims of land and the issuing of patents for all grants of land under the authority of the government of the United States, shall be subject to the supervision and control of the commissioner of the general land office, under the direction of the president of the United States.' The necessity of 'supervision and control,' vested in the commissioner, acting under the direction of the president, is too manifest to require comment, further than to say that the facts found in this record show that nothing is more easily done than apparently to establish, by *ex parte* affidavits, cultivation and possession of particular quarter sections of land, when the fact is untrue. That the act of 1836 modifies the powers of registers and receivers to the extent of the commissioner's action in the instances before us, we hold to be true. But if the construction of the act of 1836 to this effect were doubtful, the practice under it for nearly twenty years could not be disturbed without manifest impropriety;" which language, we think, directly approves of the course pursued by the land department in the case at bar; for, though it is true that in that case the contestant claimed an interest in the land at the time of the institution of the contest, yet that fact could not affect the question, as, without any appeal having been

taken to the commissioner, he reversed the finding of the register and receiver, and ordered another hearing before them.

Had the court said only as above quoted, it would be reasonably clear that the cases of *Wilcox v. Jackson,* and *Lytle v. State of Arkansas, supra,* were not applicable after the passage of the act of 1836; but we are not left in doubt upon this question as the court in the case under review proceeded further to say: "The case relied on of *Wilcox v. Jackson,* 13 Pet. 511, was an ejectment suit, commenced in February, 1836; and as to the acts of the register and receiver, in allowing the entry in that case, the commissioner had no power or supervision, such as was given to him by the act of July 4, 1836, after the cause was in court. In the next case (9 How. 333) all the controverted facts on which both sides relied had transpired, and were concluded before the act of July 4, 1836, was passed; and therefore its construction, as regards the commissioner's powers, under the act of 1836, was not involved; whereas in the case under consideration, the additional proceedings were had before the register and receiver in 1837, and were subject to the new powers conferred on the commissioner." The case of *Harkness v. Underhill,* 1 Black, 316, fully sustains the right of the commissioner to review the action of the register and receiver, and makes use of language which would seem to indicate that the question was fully settled. The court say: "The question is again raised whether this entry, having been allowed by the register and receiver, could be set aside by the commissioner. All the officers administering the public lands were bound by the regulations published May 6, 1836 (2 L. L. & O. 92). These regulations prescribed the mode of proceeding to vacate a fraudulent occupant entry, and were pursued in the case before the court. The question has several times been raised and decided in this court, upholding the commissioner's powers." The above citations

7—2 WASH.

are sufficient to show that the supreme court of the United States has more than once had substantially the same question before it, and that since the act of 1836 the jurisdiction of the commissioner has been sustained and approved. The case of *Cornelius v. Kessel*, 128 U. S. 456 (9 Sup. Ct. Rep. 122), does not militate against the doctrine of the cases before decided in that court. On the contrary, when carefully considered, it tends to confirm them; for while it is true that Mr. Justice FIELD, in deciding that case, in setting out the findings that may be reviewed by the commissioner, omits that of settlement and improvement, yet he does not say that this question cannot, in a proper case, be reviewed. On the contrary, he by inference recognizes that right, but says that it cannot be exercised arbitrarily, or so as to deprive an applicant of land lawfully paid for. The language of the opinion, taken as a whole, does not sustain the position of plaintiff in error; and, even if it did, it would lose much force from the fact that this was a case of private entry, where no act was required but the payment of the purchase money. This case, as we understand it, only asserts the recognized doctrine that the courts will inquire into the decisions of the land office as to questions of law, and, if erroneous, correct them. It may also be gathered from this case, as well as many others decided by the same court, that if the land officers have been imposed upon, and by mistake and fraud been induced to decide a question of fact wrongly, the court will interfere to protect the rights of the parties. This last question may at some future time arise upon the facts of the case at bar. But that question has not and probably could not have been raised in this case, and it is not necessary that we should say anything in regard thereto. On the whole case, we agree with the contention of the defendant in error, and the case must be affirmed.

ANDERS, C. J., and SCOTT, J., concur.

STILES, J., not sitting.

Dunbar, J. (*dissenting*). — As I indicated at the time of the filing of the majority opinion, I will now give some of my reasons for dissenting thereto. It is a common remark by practitioners before the land department that the land laws "do not amount to anything, but that everything depends upon the instructions." But, in the investigation of rights under the land laws, I prefer to look first at the law and see if any provisions are made by the law, or direct authority given by the law, for the action of the commissioner; or whether the authority is conferred upon the commissioner, under his supervising powers, to set aside the findings of the register and receiver on the questions of residence and cultivation in case of a pre-emption proof; which is the point involved in this case. An examination of the pre-emption law shows that preceding sections state what lands shall be subject to pre-emption entry, who are qualified pre-emptors, etc.; while section 12 of the act of 1841, corresponding with section 2263 of the Revised Statutes, provides that, "prior to any entries being made under and by virtue of the provisions of this act, proof of the settlement and improvement thereby required shall be made to the satisfaction of the register and receiver of the land district in which such lands lie, agreeably to such rules as may be prescribed by the secretary of the treasury," now by subsequent enactment changed to secretary of the interior. It seems to me that there is no room for a construction of this section. Here is a judicial authority conferred upon a tribunal in language plain and unmistakable. The power is conferred as plainly as words can state a proposition. It is the judgment of the register and receiver that is to be satisfied; not the judgment of the commissioner or the secretary of the interior. This is a judicial investigation on their part; not merely a clerical or administrative duty to be performed; a fact is to be judicially determined from evidence adduced under certain

rules and regulations of law. The rules and regulations governing the admission of this testimony, or the mode of procedure, are prescribed by the secretary of the interior, and it is the duty of the commissioner to see that these rules and regulations are observed, and that the investigation is conducted in accordance with them; but the judicial inquiry and determination of the facts, under those prescribed rules, are matters exclusively within the jurisdiction of the register and receiver, so far as settlement and improvement are concerned. I repeat, that if this investigation has not been carried on agreeably to, or in conformity with, such rules as the secretary is authorized to make, then, for that reason only, should the commissioner reject the proof, or send it back for a rehearing; for when those officers have obtained jurisdiction by reason of all the other requirements of the law having been met, and when their discretion and judgment have been legally exercised and a decision reached on the question of settlement and improvement, questions especially submitted to their discretion by the law, that decision is not subject to the supervising power of superior officers. There is a vast difference between prescribing rules and regulations and usurping judicial functions. Supervisory powers may be exercised over acts which are purely administrative or executive; but the distinction must be constantly kept in view between acts which are administrative or executive, and those which are judicial in their character. Under this section the register and receiver are authorized by law to exercise their discretion judicially. As was well said by the court in *Butterworth v. Hoe*, 112 U. S. 50: "It is not consistent with the idea of judicial action that it should be subject to the discretion of a supervisor, in the sense in which that authority is conferred upon the head of an executive department in reference to his subordinates. Such a subjection takes from it the quality of a judicial act."

But it is asserted by counsel for defendant in error that the commissioner, at the time of ordering a rehearing in this case, acted with authority, because the following circular instructions were then in force, viz:

"Failure to inhabit and improve the land in good faith, as required by law, renders the claim subject to contest, and the entry to investigation.

"Final proof in pre-emption cases must be made to the satisfaction of the register and receiver, whose decision, as in any other case, is subject to examination and review by this office."

I answer that, if he had no authority before the publication or issuance of these instructions, he manifestly had none afterwards. Courts must confine the enactment of laws to law-making powers. The congress of the United States is the only body that can make laws regulating the sale or disposition of the public lands. The secretary of the interior is authorized to prescribe rules and regulations to make the laws effective, and to exercise supervisory powers in certain instances; but he is not authorized to make new laws, to increase his own powers, or to take away any judicial authority that has been especially, or even generally, conferred upon another tribunal. If the secretary or commissioner are allowed arbitrarily, without any appeal, to substitute their discretion for that of the register and receiver on subjects especially submitted to them, they might logically go further, and dispense with their judgment altogether. If fraud is alleged in obtaining the final receipt, says Judge DEADY in *Smith v. Ewing,* 11 Sawy. 56 (23 Fed. Rep. 741), "the government must seek redress in the courts, where the matter may be heard and determined according to the law applicable to the rights of individuals under like circumstances. The right of a party holding a certificate of purchase of public land and that of his grantee, is a right in and to property of which neither of them can or ought to be deprived without due process of law." I think the case of

*Wilcox v. Jackson,* 13 Pet. 498, · fairly sustains the theory
of the plaintiff in error; also *Lytle v. State of Arkansas,*
9 How. 314.   It must be borne in mind that it is not con-
tended by appellant that the action of the register and re-
ceiver cannot be reviewed; but the contention simply is that
their decision on these two questions, of residence and im-
provement only, cannot be reviewed in a pre-emption case,
and such I believe to be the distinction made by the cases
generally; and those cases cited wherein their decisions have
been reversed or set aside on some other ground do not in-
volve the pertinent question in this case, and should not be
considered.   This distinction I think was plainly main-
tained in the late case of *Cornelius v. Kessel,* 128 U. S. 456.
Said Mr. Justice FIELD, in a well considered opinion:
"The power of supervision possessed by the commissioner
of the general land office over the acts of the register
and receiver of the local land offices, in the disposition
of the public lands, undoubtedly authorizes him to cor-
rect and annul entries of land allowed by them, where the
lands are not subject to entry, or the parties do not pos-
sess the qualifications required, or have previously entered
all that the law permits;" fairly implying that the entry
could not be annulled on the ground of want of proof of
settlement or cultivation.

But it is contended that the earlier cases are not in
point, because they were decided on controversies which
arose prior to the passage of the act of 1836, which en-
larged the supervisory powers of the commissioner, the
first section of which act is as follows: "That, from and
after the passage of this act, the executive duties now pre-
scribed, or which may hereafter be prescribed, by law, ap-
pertaining to the surveying and sale of the public lands of
the United States, or in any wise respecting such public
lands, and also such as relate to private claims of land, and
the issuing of patents for all grants of land under the

authority of the government of the United States, shall be subject to the supervision and control of the commissioner of the general land office, under the direction of the president of the United States." I am of the opinion that the act of 1841 was intended for a full, complete and independent pre-emption law, and, if it be conceded that the act of 1836 modified the act of 1830 with reference to the powers of the register and receiver, the re-enactment of the same section in 1841 must be conceded to be a restoration of that authority, and their decision would again be final on that point; and this view of the law is in harmony with *Johnson v. Towsley*, 13 Wall. 72, wherein Justice MILLER says that "the act of 1841 so enlarged the right of pre-emption as to have been ever since considered the main source of pre-emption rights." And it may be observed in this connection, that in all the cases relied upon by the majority, while the decisions were rendered subsequent to 1841, yet all the controverted facts had transpired prior to the passage of the act of 1841.

However, conceding that the law of 1836 is still in full force, I cannot conceive how it can in any manner conflict with § 12 of the law of 1841; for it will be observed that the law of 1836 refers exclusively to the executive duties appertaining to the survey and sale of the public lands. Certainly an executive act spoken of in general terms in the act of 1836 has no reference to a judicial duty especially imposed upon a certain tribunal. But, if there could possibly be any doubt on this question, it has been squarely met and settled in the case of *Butterworth v. Hoe*, 112 U. S. 50. There it was announced that the executive supervision and direction which the head of a department may exercise over his subordinates in matters administrative and executive, do not extend to matters in which the subordinate is directed by statute to act judicially. This was a case growing out of the patent office

department; but the subject of supervisory powers in gen-
eral, including the supervisory powers in the land depart-
ment, was reviewed with care and ability by Mr. Justice
MATTHEWS, and the doctrine announced therein, it seems to
me, is squarely decisive in this case.   So far as the case of
*Harkness v. Underhill,* 1 Black, 316, is concerned, I can-
not see its application to the case at bar.   That was not a
contest under the pre-emption laws, but simply under a
special law passed April 5, 1832, which allowed parties
a pre-emptive right to purchase not to exceed 160 acres of
land which they had already settled and improved prior to
the passage of the act, and the parties in that case had
made settlement and improvement in anticipation of the
passage of the act.   The act specially provided that all
the entries should be made under regulations prescribed
by the secretary of the interior.   There was no provision in
the act for proof of residence or improvement to the satis-
faction of the register and receiver, and the main question
involved in this case was not and could not have been
involved in that.   *Barnard's Heirs v. Ashley's Heirs,* 18
How. 43, seems to be more in point, so far as some of the
expressions in the opinion of the court are concerned,
though the material facts in that case were essentially dif-
ferent from the facts in this case.   There one of the main
questions involved was whether or not the lands were sub-
ject to pre-emption at the time of Barnard's attempted
entry.   It is not contended here that that would not be a
proper question for review by the commissioner.

I do not think that it is the province of the court to
nullify a plain provision of the law by an argument based
upon the bad policy of the law; that is purely a legislative
prerogative; though, in my judgment, the view of the law,
as contended for by the appellant, can be maintained upon
the highest grounds of public policy, and in strict accord-
ance with a just and equitable administration of the laws.

It is and should be the policy of the law that rights should be speedily adjusted, and that litigation should be terminated as soon as is possibly consistent with a rightful determination of the matters in controversy. Especially is this true with reference to rights under the land laws, where the home of the citizen is involved. Every consideration of public policy and of private right then calls for a speedy adjustment. The law recognizes the necessity, and, while leaving the more general questions to be reviewed and determined by the higher officers of the department, especially clothes a local tribunal with the power of determining the local fact of residence and improvement, under such rules and regulations as may be prescribed by the department. These officers are on the ground. They are acquainted with the character and reputation of the people making the proof. In many instances they meet the witnesses face to face; in fact, this was the universal practice at the time the law was enacted. They are acquainted with the country, its topography, its soil, and its climate. They know the peculiar circumstances surrounding the settler, in his sometimes successful and sometimes unsuccessful efforts to cultivate the soil; and they are better calculated to pass intelligently on the settler's rights in those particulars than is the commissioner or secretary, albeit "they are lower officers in the department, and are more remote from the seat of government." As one member of this court, I cannot indulge in the presumption that an officer's tendency to a careless or corrupt administration of a trust reposed in him is in proportion to his rank or the distance of his habitation from the seat of government. I prefer to believe that —

"The rank is but the guinea-stamp;
The man's the gowd for a' that."

But, that all possible safeguards might be thrown around this investigation, the act of 1879 provides that notice of

proof shall be given by publication in a newspaper nearest to the land in question for thirty days before the day of proof, and that the names of the witnesses by which claimant intends to establish his claim shall be given in such publication. Opportunity is thus given, to any one who has knowledge of bad faith on the part of the claimant, to appear and resist the claim. Up to this time the settler understands that he must look out for, and have on hand the necessary witnesses, and he makes arrangements accordingly. He makes his proof as the law requires, and to the satisfaction of the tribunal empowered by the law to pass upon the sufficiency of proof. No one appears to contest his right. No appeal is taken from the decision rendered. He pays the money demanded by the government, and so far as he knows, and is able to ascertain, the case is closed. His final certificate issues. He takes possession of the land, and pays taxes on it. His witnesses are allowed to depart and leave the country, as they are very liable to do in all new countries. He makes valuable improvements on the land, and all the results of his years of labor between the time that he makes his proof and the long time which frequently elapses before patent issues is absorbed by the land; and I agree with the attorneys for the appellant that to subject him during all this time to the uncertainties of an arbitrary proceeding or hearing before the officers of the executive or political branches of the government, at a time when he may be helpless to secure the evidence which he needs, and where he may be overwhelmed with so-called "testimony," which does not have the sanction even of an oath upon which perjury can be prosecuted, is so obviously unjust and unfair that the courts ought not to sanction it.

In the case at bar, Pierce made his final proof to the satisfaction of the register and receiver on the 13th day of February, 1883, paid to those officers the sum of $400, and

received his "patent certificate." No appeal was taken from this decision; but six months afterwards, Frace, a stranger, filed with the commissioner an affidavit alleging that Pierce had not established a residence upon said land. No action was taken by the commissioner upon this notice until May 16, 1885. Thus it will be seen that after the expiration of two years and three months from the adjudication of this case Pierce's right to this land was called in question in this summary manner. The judgment was re-opened and set aside. The land was awarded to the informer, the government retaining the purchase price paid by Pierce, presumably upon the ground that perjury had been committed in making the proof, without giving him an opportunity to answer that charge in a court of competent jurisdiction, where a judicial determination could be had on that question. There is no claim that the land was not properly subject to pre-emption entry, or that Pierce was not a qualified pre-emptor, or that the register and receiver had not complete jurisdiction of the case when it was first tried, but the sole question involved was one of residence. This question having been once decided by the proper tribunal, and certificate of patent having issued, I think that the commissioner acted without authority of law in disturbing that decision.