THE GERMAN INSURANCE COMPANY OF FREEPORT, ILLINOIS, v. HAYDEN ET AL.

1. INSURANCE—CONSTRUCTION OF CONTRACTS.

When a clause in a contract of insurance is susceptible of two constructions, that one will be adopted which is more favorable to the assured; but when the language of the contract is clear and unambiguous, its effect cannot be destroyed by construction.

2. PUBLIC LANDS— JURISDICTION OF LAND OFFICERS.

The decision of the officers of the land department as to matters within their jurisdiction is final and conclusive, in the absence of fraud.

3. SAME.

The land department of the government has the right to make necessary and reasonable rules governing the manner in which the character of the land entered shall be made to appear, both *prima facie* and ultimately, and if these rules are not complied with, or if it appears that the land is not·such as can be entered under the particular claim advanced to it, it is not only the province, but the duty of the land department to deny the entry.

4. INSURANCE.

In an application for insurance, in response to the question, "What is your title?" the assured answered "Good." The policy issued thereon contained the following stipulation: "That if the interest of the insured in the said property or any part thereof now is or shall become any other or less than a perfect legal and equitable title and ownership free from all liens whatever, except as stated in writing thereon, if the property be incumbered by a mortgage or otherwise, or if the buildings or either of them stand on land of which the assured has not a perfect title then this policy shall be void." Afterwards the entry which had been approved by the local land officers was canceled by the secretary of the interior, but no notice of a change of title having been given to the company, *held* that the company is not liable to pay a subsequent loss.

5. INSURANCE—PRIOR INSURANCE.

A policy is not avoided by the fact of a prior insurance when such prior insurance had lapsed before the issuance of the policy sued on.

| 21 | 127 |
| 22 | 478 |

| 21 | 127 |
| 11a | 260 |

| 21 | 127 |
| h27 | 494 |

| 21 | 127 |
| 16a | 353 |

| 21 | 127 |
| 33 | 415 |

6. INSURANCE—APPLICATION—ESTOPPEL.

It appearing that the part of the application for insurance containing a statement as to the amount of incumbrance on the property was filled out by an agent of the company, and that he was at the time correctly informed as to the amount of incumbrance on the property, and that the error in the application occurred as the result of his negligence and through no fault of the assured, and that the agent of the company wrote this answer in the printed form in the application without the knowledge of the assured, and that the proper facts having been communicated to the agent at the time, *held*, the company is estopped to take advantage of the falsity of the answer.

*Appeal from the District Court of Arapahoe County.*

ACTION upon fire insurance policy. Trial to the court. Findings and judgment for the plaintiffs. Defendant appeals.

" The plaintiffs complain of the defendant and allege :

"*First.* That the defendant is a corporation duly organized and existing under and by virtue of the laws of the state of Illinois.

"*Second.* That on the fourteenth day of July, 1885, Clara P. M. Leonhardy was owner of a certain frame dwelling house near the post office in Riverside, in the county of Chaffee, state of Colorado, and of a certain frame milk house near said dwelling house, and in consideration of the premium of one hundred and fifty (150) dollars paid to said defendant, the said defendant made, executed and delivered its policy of insurance in writing, whereby it *secured* said Clara P. M. Leonhardy against loss or damage by fire to the amount of four thousand eight hundred (4,800) dollars on said dwelling house, and two hundred dollars on said milk house, from the fourteenth day of July, 1885, at twelve o'clock noon, to the fourteenth day of July, 1890, at twelve o'clock noon.

" *Third.* That on or about the said fourteenth day of July, 1885, the said Clara P. M. Leonhardy made, executed and delivered her certain promissory note, payable to the order

of Hayden and Dickinson, a partnership composed of the aforesaid plaintiffs, for the sum of five thousand dollars, and then and there made, executed and delivered her certain deed of trust, whereby she conveyed the land upon which the said insured buildings stood to Job A. Cooper, trustee, for the use of said plaintiffs, to secure to said plaintiffs the payment of said note, and it was provided in said policy of insurance that the loss, if any, should be payable to the said Job A. Cooper, trustee, as his interest should appear. And plaintiffs allege that said provision of said policy was made for their sole use and benefit.

" *Fourth.* That the said Clara P. M. Leonhardy and the said plaintiffs have duly performed all the conditions of said policy on their part to be performed, and on the _____ day of June, 1890, the said dwelling and the said milk house were totally destroyed by fire.

" *Fifth.* That the loss of the said insured thereby was five thousand (5,000) dollars, and that said deed of trust and the debt is still wholly unpaid and unsatisfied.

" *Sixth.* That the said plaintiffs immediately after said fire, and on, to wit, the _____ day of June, 1890, furnished the said defendant with due proofs of said loss according to the terms of said policy.

" *Seventh.* That no part of said money has been paid ; that said sum is now due to said plaintiffs from said defendant.

" Wherefore, plaintiffs demand judgment for the sum of five thousand dollars, with interest thereon from the _____ day of June, A. D. 1890, to the date of judgment herein."

### AMENDED ANSWER.

" Comes now the above named defendant and for answer to plaintiffs' petition says :

" *First.* That it denies each and every allegation in plaintiff's petition, except such as are hereinafter specifically admitted.

" *Second.* Admits that defendant is a corporation as al-

leged, and that defendant issued the policy of insurance sued on for the amount alleged and covering the property described in plaintiffs' petition.

"*Third.* Admits the execution of the note and deed of trust in favor of plaintiffs as alleged in plaintiffs' complaint.

"*Fourth.* Admits that the insured buildings were destroyed by fire about the time alleged by plaintiffs, but denies that the said Clara P. M. Leonhardy, or the plaintiffs, have performed all the conditions of said policy of insurance.

"*Fifth.* Denies that said assured was injured by said fire in the sum of five thousand dollars, but on the contrary defendant alleges that the insured buildings at and immediately prior to said fire were not worth to exceed two thousand dollars, and that there was no damage to any one on account of the burning thereof to exceed $2,000.

"*Sixth.* As to whether said deed of trust and the debt secured thereby remains due and unpaid, defendant does not know, neither has it any knowledge or information sufficient to form a belief.

"*Seventh.* Defendant admits that plaintiffs have furnished the necessary proofs of loss under the terms of the policy.

"*Eighth.* Admits that nothing has been paid under said policy, but denies that any sum is now due to plaintiffs from defendant.

"*Ninth.* Defendant, by way of further answer and defense to plaintiffs' complaint, says:

"That it is expressly stipulated in said policy as a condition therein 'that insured covenants that the application herefor shall be and form a part hereof, and a warranty by the assured,' and the defendant says that on the 14th day of July, 1885, the said assured did make, sign and submit to the defendant a written application for said insurance and in said application said insured did in writing expressly agree that the statements in the application 'shall be the sole basis of the contract between the company and the insured.'

"And in said application did warrant the application 'to contain a full and true description and statement of the con-

dition, situation, value, occupation and title of the property proposed to be insured, and warrants the answers to each of the questions in the application to be true.'

" *Tenth.* Defendant says that in the aforesaid written application the following question was asked the assured : ' What is the title ? ' to which question the said assured answered ' good,' and defendant says that said answer was false and untrue and a breach of the said warranty in said application and policy because defendant says that assured's title was not good ; that she did not have any title to the real estate on which said insured buildings were situate, and had no title to said buildings thereon; and that by reason of said false answer said policy was and is wholly void.

" *Eleventh.* Defendant says that in said written application the following question was asked the insured : ' Is your property incumbered, by what and to what amount ? ' To which question assured answered ' $800,' which said answer was false and untrue, and a breach of said warranty, because said assured in said application did not disclose the true amount of incumbrance on said property, because defendant says that at the time of making said application said property was incumbered by a deed of trust previously given upon said property by said assured, Clara P. M. Leonhardy, to Job A. Cooper, to secure to the firm of Hayden and Dickinson the payment of the sum of five thousand dollars, which said deed of trust was then and there a valid and subsisting lien on said insured property in said sum, and that by reason of said false answer said policy was and is wholly void.

" *Twelfth.* Defendant further says that in said written application the following question was asked : ' Is there any other insurance on this property ? ' to which said assured answered, ' No,' when in truth and in fact said answer was false and untrue, and a breach of said warranty contained in said application and policy, because defendant says that there was then and there other insurance on said dwelling house and milk house in the State Insurance Company of Des Moines, Iowa, in the sum of six thousand eight hundred and

twenty-five dollars, and further that at said time of said application there was other insurance on said milk house described in plaintiffs' complaint, in the Denver Insurance Company, in the sum of two hundred dollars, and that by reason of said false answer in said application with regard to other insurance said policy was and is void.

" *Thirteenth.* Defendant further says that in said application the following question was asked assured : ' If incumbered, what is whole value of your real estate, including buildings and land ? ' to which assured answered in said application as follows : ' One hundred and forty-nine acres, per acre $150,' meaning thereby that said land including buildings thereon was worth $150 per acre, when in truth and in fact said answer was false and untrue, because said land with the buildings thereon was worth less than twenty-five dollars per acre, and by reason of said false answer said policy was and is void.'

" *Fourteenth.* Defendant further says that it is stipulated in the policy of insurance sued on as a condition therein that ' if other prior concurrent or subsequent insurance exist, whether valid or not, on said property or any part thereof, without the company's consent hereon, then in such case this policy shall be absolutely void.'

" Defendant says that at the time of the issuing the policy here sued on there was other prior insurance on said insured buildings not endorsed on the policy sued on and to which defendant did not consent, to-wit, $6,825 insurance on said insured buildings in the State Insurance Company of Des Moines, Iowa, and that after the issuance of the policy sued on there was other insurance in the sum of $200 taken out on the insured milk house in the Denver Insurance Company, by reason of which the policy sued on was and is wholly void.

" *Fifteenth.* Defendant further says that it is expressly agreed and stipulated in the policy sued on as a condition therein, ' That if the interest of the insured in the said property or any part thereof now is or shall become any other or

less than a perfect legal and equitable title and ownership free from all liens whatever, except as stated in writing thereon, if the property be incumbered by a mortgage or otherwise, or if the buildings or either of them stand on land of which the assured has not a perfect title then this policy shall be void.'

"Defendant says that assured at the time of the issuance of policy did not have, and has not now a perfect title to said land on which the insured buildings were standing, and that said property was not free from liens, but that the same was incumbered as set forth in the eleventh defense herein, and by reason of the want of title in assured to said land on which said buildings stood, and by reason of such incumbrance or lien this policy was and is void. Wherefore defendant having fully answered asks to be discharged with costs of suit."

The replication admits that the application contains replies to questions as alleged in the answer, but denies that the amount of the incumbrance was ever stated by the applicant at $800 ; alleges that the amount was given at $5,000, the latter being the correct amount. It admits the provision of the policy with reference to forfeiture, as alleged. All other new matters set up in the answer are denied.

Messrs. Stuart, Murray & Andrews and Mr. G. W. Barnett, for appellant.

Mr. John H. Denison, for appellees.

Chief Justice Hayt delivered the opinion of the court.

It is admitted by the pleadings that in the application the insured in answer to the question, "What is your title?" answered, "Good." And it is likewise admitted that the policy contained the following stipulation :

"That if the interest of the insured in the said property or any part thereof now is or shall become any other or less than a perfect legal and equitable title and ownership free

from all liens whatever, except as stated in writing thereon, if the property be incumbered by a mortgage or otherwise, or if the buildings or either of them stand on land of which the assured has not a perfect title then this policy shall be void."

The facts in reference to the title to the real estate upon which the insured buildings stood are as follows : Upon the 28th day of January, 1880, and prior thereto, the title was in the United States. Upon the date mentioned, Leonhardy located the same as the Leonhardy placer claim, and on the 19th of April, 1880, filed his application for patent for this claim, covering $149\frac{41}{100}$ acres. Advertisement of said application was duly made. It does not definitely appear at what time this advertisement expired, but it is certain that no adverse was filed during the time within which the law permits the same to be filed, or in fact at any other time.

On the 7th of February, 1882, one David N. Cook filed a protest against the issuance of a patent to $19\frac{3}{10}$ acres of the ground claimed by Leonhardy as a placer claim, alleging that he had filed upon the same as agricultural land ; that it was agricultural and not mineral land. A hearing before the local officers upon this protest resulted in an order overruling it. The insured buildings were not situate upon any part of the $19\frac{3}{10}$ acres involved in the Cook protest. Seven days thereafter, to-wit, on February 14, 1882, the receiver issued his final receipt to Clara P. M. Leonhardy for the surface area embraced in the Leonhardy placer claim of $149\frac{44}{100}$ acres. From the order overruling the protest filed by Cook an appeal was taken to the commissioner of the general land office. In the general land office it was discovered that the report of the deputy surveyor upon the character of the Leonhardy placer claim was not in compliance with the rules of the department, and it not appearing to the satisfaction of the commissioner that the lands were mineral lands, the entry was suspended and the matter referred to the register and receiver of the local land office for

a hearing, to determine the character of the entire tract and its adaptability for placer mining.

The testimony taken upon this hearing before the register and receiver is very voluminous. An opinion was filed on the 4th of May, 1883, in which it was held that the preponderance of the testimony was in favor of the proposition that the ground in dispute was more valuable for mineral than for agricultural purposes. From this decision Cook appealed. When the case again reached the commissioner, he held that the evidence did not establish the mineral character of the land, reversed the decision of the register and receiver, and cancelled the Leonhardy entry. From this order an appeal was taken to the secretary of the interior, who in turn affirmed the decision of the commissioner. Upon a motion for review of this latter decision before the honorable secretary, a written opinion was filed reviewing the entire transaction from its inception, affirming the previous decision under which the Leonhardy placer claim was cancelled.

The final order was made by the secretary of the interior on the 9th of January, 1889. Of this order Mrs. Leonhardy had notice, but it does not appear from the evidence that the Insurance Company was ever notified of the cancellation of the entry, or that the company had notice of the invalidity of the Leonhardy title at any time prior to the destruction of the insured buildings by fire, and demand for payment under the policy, although the buildings were destroyed by fire some time during the month of June, 1890, nearly eighteen months after the cancellation of the Leonhardy entry.

When a clause in a contract of insurance is susceptible of two constructions, that one will be adopted which is more favorable to the assured; but when the language of the contract is clear and unambiguous, its effect cannot be destroyed by construction. The rights of both insurer and insured must be governed by the contract solemnly executed.

In this case the covenant in regard to title is clear and unambiguous. If the title fails, "then the policy shall be void." This would seem to be a wise provision, necessary

to the protection of both insured and insurer. Certainly, as a general proposition, it is to their mutual interest that the inducement to incendiarism shall be reduced to the minimum. The title of the realty is an important consideration in determining the value of buildings. A building may be worth thousands of dollars to the owner of the realty, while to others it would be of but little value. Consequently the inducement to incendiarism would be greatly increased if contracts of insurance executed upon a valuation based upon the assumption that the title to the realty and to the buildings is in one and the same person could be enforced if in fact the title was not thus united.

In the present instance, the title failed by reason of an inherent infirmity,—the land not being mineral land, and consequently not open to entry under the mining laws of the United States. The character of this land was a question of fact, the determination of which is specially committed to the appropriate officers of the land department of the government, and their decision in all cases within their jurisdiction is final and conclusive, in the absence of fraud. *Lindsey v. Hawes*, 2 Black, 554; *Lee v. Johnson*, 116 U. S. 48; *Vance v. Burbank*, 101 U. S. 514.

It is claimed, however, in this case, that the land officers were acting without jurisdiction. This claim is based upon the assumption that a protestant has no right of appeal, and upon the further claim that by the protest filed only a small portion of the placer claim was involved, the buildings not being upon such portion.

The answer to this claim will be found in the statutes. By section 2329 of the Revised Statutes of the United States it is provided that a placer claim is "subject to entry and patent under like circumstances and conditions and upon similar proceedings as are provided for vein or lode claims." In section 2325, provision is made with reference to lode claims as follows:

"If no adverse claim shall have been filed with the register and the receiver of the proper land office at the expira-

tion of the sixty days of publication, it shall be assumed that
the applicant is entitled to a patent, upon the payment to
the proper officer of five dollars per acre, and that no adverse
claim exists; and thereafter no objection from third parties
to the issuance of a patent shall be heard, *except it be shown
that the applicant has failed to comply with the terms of this
chapter.*" The standing of the protestant seems to be regu-
lated by the exception in the paragraph last quoted. The
statement that he is not a party and therefore not entitled
to appeal is immaterial to the real question at issue. The
law does not knowingly permit a claimant to obtain patent
under the mineral laws to agricultural lands, and when a pat-
ent is applied for it is quite unimportant as to how the atten-
tion of the land department may be called to the character
of the land sought to be patented. That department certainly
has the right to make necessary and reasonable rules gov-
erning the manner in which the character of the land shall
be made to appear, both *prima facie* and ultimately, and if
these rules are not complied with, or if it appears that the
land is not such as can be entered under the particular claim
advanced to it, as, for instance, where agricultural lands are
applied for under the mining laws, it is not only the province,
but the duty of the land department to deny the entry. It
should be unnecessary to cite authorities in support of the
foregoing, but as the contrary has been seriously urged in
this case, we cite the following cases: *Lindsey v. Hawes,
supra; Pierce v. Frace,* 26 Pac. Rep. 192 (Wash.); *Harkness
v. Underhill,* 1 Black, 316; *McCarthy v. Mann,* 19 Wall. 20.

The law does not make the local land officers the tribunal
of last resort upon these questions, although upon their de-
cision the price of the land may be accepted and a receiver's
receipt issued. The commissioner of the general land office
has a right, and it is made his duty, to examine the applica-
tion and proofs in support thereof, before the issuance of a
patent. In this case, upon such an examination, it was found
that the proof failed to show that the lands embraced in the
Leonhardy placer claim were mineral lands, and a hearing

upon this question was ordered. Upon a subsequent review it was found that the lands were more valuable for agricultural than for mineral purposes, and the receiver's receipt theretofore issued was accordingly ordered cancelled. Upon appeal by Leonhardy to the secretary of the interior, this decision was affirmed. The land department not only had jurisdiction, but the proceedings appear to have been regular and proper. We find nothing in the case of *Godding v. Decker et al.*, 3 Colo. App. 198, to militate against this conclusion. That court was then considering the position of a protestant with reference to an appeal in preëmption conflicts, and the right was denied; but that the land office should, in a proper case, cancel an entry upon its own motion, although certificate had been issued, is expressly recognized. And the same is true of *Wilson v. Fine*, 40 Fed. Rep. 52, where it was held that "an entry and certificate, issued to a settler under the homestead act for land subject to entry thereunder, cannot be set aside or cancelled by the land department, on its own motion, for fraud or mistake committed or occurring in obtaining or issuing it."

Without expressing any opinion upon the doctrine announced, we need only call attention to the fact that it is expressly predicated upon the assumption that the land was subject to entry under the homestead act. Here the reverse is true. The land is not subject to entry under the mining laws.

The title of Mrs. Leonhardy under her placer claim having been denied for the reason that the land was agricultural, and for this reason not subject to entry as mineral lands, avoided her title *ab initio*, and the very condition was presented which the parties had agreed should forfeit the policy of insurance.

The buildings were not destroyed by fire until nearly eighteen months had expired after due notice had been given Mrs. Leonhardy of the failure of her title. It was certainly her duty to have promptly notified the company of this failure,

and, not having done so, she cannot recover in this action, as it is conceded that the same defenses can be made against these plaintiffs as could be made against the assured, Mrs. Leonhardy. The company assumes no greater or different burden by reason of the loss being payable to the mortgagee.

No effort was made in the court below to show that the company had any notice whatever of the failure of title to the realty. Had such notice been received, and no action taken by the company, perhaps it would be estopped from denying that the policy was in force, but such estoppel would depend upon facts and circumstances not now before the court.

In view of the possibility of a new trial, we shall notice two other assignments of error which have been urged upon this appeal. It is claimed that there was a prior insurance on the property which avoided the policy, but the evidence shows that such prior insurance as there had been upon the property had lapsed at the time of the issuance of the policy sued on. Before application was made for this policy, the mortgagees, acting for and on behalf of Mrs. Leonhardy, made inquiry at the office of the company which issued the prior insurance, and were informed that such insurance had been cancelled, and that that company at the time had no insurance upon the property. Under these circumstances, we agree with the district court that the policy sued upon was not forfeited by reason of other insurance.

So, also, with reference to the answer as to the amount of incumbrance upon the property, viz. that it was $800, instead of $5,000, it is clear that this part of the application was filled out by an agent of the defendant company, and that he was at the time correctly informed as to the amount of the incumbrance upon the property, and that the error in the application occurred as the result of his negligence and through no fault of the assured. It appearing that the agent of the company wrote down this answer in the printed form in the application, without the knowledge of the assured,

and the true facts having been communicated to the agent at the time, the company is estopped to take advantage of the falsity of the answers. *State Insurance Co. v. Taylor*, 14 Colo. 499.

For the reasons stated the judgment must be reversed.

*Reversed.*