[No. 3350. Decided January 2, 1900.]

## Perry W. Lawrence et ux., Appellants, v. John G. Potter et ux., Respondents.

PUBLIC LANDS—CONTESTS—JURISDICTION.

The failure of the register of a land office, upon the cancellation of a homestead entry under Rev. St. U. S. § 2297, to find affirmatively that the entryman had abandoned his claim for six months, would not affect his jurisdiction to forfeit and cancel the entry for other causes, in view of the act of congress vesting the land department with power to determine all contests arising under the statutes granting a right to acquire title to the public lands of the United States.

SAME.

The rule of the land department requiring contests to be heard before the register and receiver of the local land office, made under authority of the supervisory powers given by statute to the secretary of the interior in public land matters, which rule had been long acquiesced in and become the settled practice of the department, must be held by the courts as in aid of Rev. St. U. S. § 2297, which names the register alone as the tribunal before whom hearings should be had in such cases, inasmuch as there is nothing in the rule prejudicial to contestants, since the contest is reviewable de novo on appeal to higher divisions of the department.

SAME—ESTOPPEL.

Even if the action of the register and receiver of a land office in deciding a contest may have been so far in derogation of Rev.

St. U. S. § 2297 as to be irregular, the contestant complaining thereof is estopped to raise the objection in the courts, when he has failed to raise the point before the local land officers, the commissioner of public lands, or the secretary of the interior.

Appeal from Superior Court, Whitman County.—Hon. WILLIAM E. RICHARDSON, Judge.    Reversed.

*Chadwick & Bryant* and *U. L. Ettinger,* for appellants. *J. T. Brown,* for respondents.

The opinion of the court was delivered by

DUNBAR, J.—On October 3, 1883, John G. Potter filed a homestead application on the land in controversy.    On December 24, 1885, the appellant Perry W. Lawrence filed a contest in the land office at Spokane, claiming that Potter had abandoned said land.    The material part of the affidavit of contest was as follows:

" That said John G. Potter has wholly abandoned said tract, and changed his residence therefrom for more than six months since making said entry and next prior to the date herein; that said tract is not settled upon and cultivated by said party as required by law, and affiant further says that said John G. Potter has removed his effects, except some bedding and a sheet iron stove, from said land and has been residing near Colfax, W. T."

Notice of contest was issued by the register on December 24, 1885, and duly served upon Potter.    Testimony was taken in relation to the matters therein involved on February 3, 1886.    On the 26th day of September, 1887, the register and receiver decided against Potter and ordered a cancellation of his homestead entry.    An appeal was taken from this decision to the commissioner of the general land office, which officer reversed the decision of the local land office.    An appeal was then taken from the commissioner's decision to the secretary of the interior, who re-

3—22 WASH.

versed the decision of the commissioner, and affirmed that of the local land office. On July 29, 1891, Lawrence filed a homestead application on the land in controversy, and in due course of time a patent was issued, viz., July 18, 1895. After the issuing of the patent to Lawrence, this action was brought, which is an action of ejectment, Potter having retained possession of a small portion of the land embraced in the original homestead. The case was tried by the court on stipulation by counsel for respective parties, and the court found that the register and receiver had no jurisdiction to decree the cancellation of the homestead by Potter and that all subsequent proceedings in the land department, including the issuance of the patent to Lawrence, were void and of no effect; that the respondent Potter was entitled to the legal title to all the land embraced in the said homestead entry; that the alleged title of the appellant was a cloud upon the respondent's title, and that the respondent was entitled to have said cloud removed, and adjudged that the appellant should convey to the respondent all the right, title, interest, and estate to the said land. From this judgment this appeal is taken. Upon the filing of the answer a demurrer was interposed, to the effect that it did not constitute a defense. The demurrer was overruled, and the plaintiffs replied. It is earnestly contended by the appellants that the demurrer should have been sustained in this case, but, with the view we take of the law, it is not necessary to discuss this proposition, but we will pass upon the questions involved, which will finally dispose of the case. There is a great deal of argument in the briefs in regard to whether or not fraud was properly alleged in the answer, but, as any attempt to allege fraud or to make fraud one of the issues in the case by the answer is especially disclaimed by the brief of the respondents, it is not necessary for this court to enter into an analysis of the answer with the deter-

mination of that question in view. Stripped of all extraneous matter, as we understand it, there are two propositions in this case upon which the respondents rely, and upon which the court based its judgment. First, That the register of the land office had no lawful authority to forfeit the homestead entry of the respondent Potter, until he had found and decided affirmatively as a fact that Potter had changed his residence from, and abandoned, the lands embraced in his entry for more than six months since making his entry next prior to December 16, 1885 ; that the finding of such fact is a jurisdictional prerequisite required by statute, without which the register did not have or acquire any jurisdiction to forfeit or cancel said entry; and it is insisted that it logically follows that, if the register acted without jurisdiction, neither the commissioner of the general land office nor the secretary of the interior ever acquired any jurisdiction on the appeal in said case to forfeit said homestead entry, and that by reason thereof the homestead entry of Potter was never lawfully forfeited or canceled, and that the same is now in full force and virtue in law. Second, That there is no authority in law for the register and receiver to act jointly in a homestead contest proceeding. It is a general proposition, recognized by all authorities, that when a special tribunal is constituted by law for the purpose of determining certain matters arising in the course of its duties, its decisions within the scope of its authority are conclusive, and that the decision of the land department, to which are submitted the facts involved in the distribution of the public lands— which facts are the foundation of action on the part of the departmental officers, unaffected by fraud or mistake— is conclusive upon the courts; but it is just as well settled that there exists in the courts the power to inquire into and correct mistakes, injustice, and wrong resulting from the action or administration of the officers of the land depart-

ment, when title to the land in question has passed out of the government into the hands of private individuals. But, in the absence of fraud or mistake, the decision of the departmental officers is final, except as such decision may be reversed on appeal in that department. This question was elaborately discussed in *Wiseman v. Eastman,* 21 Wash. 163 (57 Pac. 398), where the authorities were collated and reviewed. It does not appear that this principle of law is seriously contested in this case, but the main contention is that such mistakes of law were made by the department as give the courts of the land jurisdiction to review.

The first contention of the respondent is that the affirmative finding was not made that Potter had abandoned his claim upon said land. The concluding announcement of the register and receiver is as follows:

"Although Mr. Potter had not, at the date of this contest abandoned his claim upon this land, he had, in our judgment, forfeited his right to it as a homestead, when this question is to be considered in the presence of an adverse claim. We therefore decide that the homestead entry of John G. Potter, for the land in question, should be canceled and cleared from the records.

J. M. Adams, Register.
M. G. Barney, Receiver."

It is contended that, not only is there no affirmative finding of abandonment, but that there is substituted an affirmative finding that there was no abandonment; hence the decision was without effect, inasmuch as jurisdiction to decide that the land in question should be canceled rested upon the affirmative finding that the land had been abandoned by the contestee. It will not do to take excerpts from the findings of the register and receiver, to determine the standing of the parties to the contest, but the whole report must be taken into consideration; and, taking the whole report thus into consideration, it is not difficult to

conclude that, in the opinion of the register and receiver, an honest settlement had not been made by the homestead applicant upon his homestead, and that he had in fact abandoned his claim; nor does it appear that the objection urged by Potter to the findings of the register and receiver, that the decision was based on other grounds than that of abandonment, is well founded, for, while the report is somewhat discursive, and the respondent might be justified in coming to the conclusion that the writer of the report was possessed of a vivid imagination, combined with a poetic temperament, it, in substance, shows that all of the matters considered bore upon the ultimate fact of abandonment.      Besides, it has been decided in *Wiseman v. Eastman, supra,* that the Revised Statutes of the United States (§ 2297), prescribing certain causes for the institution of a contest before the land department, does not preclude the department from hearing contests for other causes, in view of the act of congress vesting the land department with power to determine all contests arising under the statutes granting a right to acquire title to the public lands of the United States; citing *Knight v. United States Land Association,* 142 U. S. 161 (12 Sup. Ct. 258).

The respondents' second contention—and the one they most cogently urge—is the fact that it is shown by the record that the register and receiver both passed upon the question of abandonment, when it is alleged that such discretion is vested in the register alone, under § 2297, Rev. St. U. S., which provides that

" If, at any time after the filing of the affidavit, as required in section twenty-two hundred and ninety, and before the expiration of the five years mentioned in section twenty-two hundred and ninety-one, it is proved, after due notice to the settler, to the satisfaction of the register of the land-office, that the person having filed such affidavit has actually changed his residence, or abandoned the land

for more than six months at any time, then and in that event the land so entered shall revert to the Government,"

and that the joint consideration and decision of the contested case by said register and receiver was unlawful, *coram non judice,* and void, and by reason thereof neither the commissioner of the general land office nor the secretary of the interior ever had or acquired any jurisdiction of said appeal taken from said decision. In this connection it may be stated that on December 14, 1865, the following circular of instruction was issued to the registers and receivers of the various land offices throughout the country by the then commissioner of the general land office (omitting a few introductory remarks) :

" When a homestead entry is contested and application is made for cancellation, the party so applying must file an affidavit setting forth the facts on which his allegations are grounded, describing the tract and giving the name of the settler. You will then set apart a day for a hearing, giving all the parties in interest notice of the time and place of trial.

On the day of hearing you will distinctly show at the caption of the papers in the proceedings the name of the settler, description of the tract, number and date of entry. You will then proceed with the examination of the witnesses. Each deposition must be signed by the witness and acknowledged before either the Register or Receiver; and at the conclusion of the trial you will briefly review the testimony, and thereafter will transmit to this office all the papers, with your joint decision thereon annexed thereto, for final determination." (Lester's Land Laws, Regulations and Decisions, p. 259.)

It is contended that no instruction by the department can be sustained that is inconsistent with the law; that congress alone is the law-making power, and, having imposed this discretion upon the register, it is not within the power of the department to establish a different tribunal for the determination of the questions involved in home-

stead contests; and many cases are cited to sustain this
contention.   It may be stated that we think that, if the
instruction is *actually in conflict with the law*, and with
its spirit and intention, so that one could not be followed
without abrogating the other, the law, instead of the in-
struction, must prevail; but it appears to us, considering
the object of the land laws and the necessary informalities
that are tolerated by the department to carry out, in its true
spirit, the evident intention of congress to make available
the public lands of the government to *bona fide* homestead-
ers, who are, as a class, people in limited financial circum-
stances, without necessitating on their part the employ-
ment of technical lawyers, that the instruction of the de-
partment in relation to the joint action of the receiver and
register is not in conflict with the statute; that it does not
deprive any citizen of the benefit of the statute, but, on the
contrary, is rather in aid of the statute.   In the very
nature of the work to be done and the multifarious and
perplexing questions, which must necessarily arise in the
administration of the public land laws, very great discre-
tion must be lodged in the land department; not, it is true,
to the extent of depriving a citizen of any right, but to the
extent of devising the best and most practical method of
obtaining the rights created by the law.   To the secretary
of the interior is intrusted the administration of these
laws.   He has supervisory powers over all the officers
below him and is the final arbiter of all questions of fact.
Hence the conclusion of the register and the receiver is,
at best, but advisory.   The commissioner is not bound
by it, and the secretary is not bound by the judgment of
either the local land officers or of the commissioner.   He
tries the case *de novo* and decides upon the testimony pre-
sented to him; and the fact that the receiver joined in the
judgment or dissented from it would be, at most, a mere
irregularity, which could not affect the merits of the con-

troversy.　It was said by this court in *Wiseman v.East-man, supra,* that

" The jurisdiction of the courts does not go to the extent of reviewing the decisions of the land department for the purpose of doing abstract justice between litigants, but only to the extent of ascertaining whether or not a litigant has had a trial according to the rules of law governing the procedure applicable to that department."

Again, this has been the accepted practice for many years, and courts will not, unless they are compelled to by the plain provisions of the law, adjudge illegal a rule promulgated by a department to whose discretion is submitted the administration of certain laws, when the annulment of such law would have such baneful effects as would this, where hundreds of patents have been issued upon the same state of facts as are involved here.　In addition to this, if there is no jurisdictional question involved, every principle of equity and fair dealing prompts the invoking of the doctrine of estoppel in this case.　The respondent Potter submitted his case, without objection or protest, to the judgment of the register and receiver; and, not only this, but when he appealed from their decision to the commissioner, no objection was made to the jurisdiction in that respect; nor did he, when the appeal was taken to the highest tribunal in the land department, raise this question there, but submitted his case to that tribunal without objection.　It was tried there upon its merits, and, the judgment being against him, he ought not now to be heard to say in a court of justice that none of the tribunals mentioned had jurisdiction to try his case.

The administration of the land laws is a system which has been built up and perfected by the experience of the country, and congress has, from time to time, been called upon to aid the department in the administration of its charge, and has done so by giving supervisory powers to

the commissioner and to the secretary of the interior. Section 441 of the Revised Statutes of the United States, passed on March 3, 1849, charges· the secretary of the interior with the supervision of the public lands. Section 453 provides that the commissioner of the general land office shall perform, under the direction of the secretary of the interior, all executive duties appertaining to the surveying and the sale of the public lands of the United States, or in anywise respecting such public lands; and, also, such as relate to private claims of land, and the issuing of patents for all of the land under the authority of the government. Section 2478 provides that the commissioner of the general land office, under the direction of the secretary of the interior,. is authorized to enforce and carry into execution, by appropriate regulations, every part of the provisions of this title not otherwise specially provided for, the title being "Public Lands."

So that, in the determination of jurisdiction and authority, not only the acts themselves, but subsequent enactments of· congress conferring supervisory powers and authority on the different officers of the land department, must be considered, to the end that a harmonious system may be established; and, to establish harmony in the administration of the land laws, it becomes necessary to construe liberally the acts granting supervisory powers to the head of the land department; and the courts of the United States and of the different states of the Union have recognized this necessity, and have uniformly sought to aid, instead of hamper, the department in the administration of the law.

In *Pierce v. Frace,* 2 Wash. 81 (26 Pac. 192), (where the writer of this opinion dissented from the majority opinion of this court, entertaining then to a considerable extent the views expressed by the respondents in this case),

it was held by this court that, although § 2263, Rev. St. U. S., provides that

"Prior to any entries being made under and by virtue of the provisions of section twenty-two hundred and fifty-nine, proof of the settlement and improvement thereby required shall be made to the satisfaction of the register and receiver of the land district in which such lands lie, agreeably to such rules as may be prescribed by the Secretary of the Interior;"

and subsequent sections provide for a contest and appeal in cases where there was conflicting interest between private individuals, and no contest or appeal was provided by law in cases arising under § 2263, yet, under the general supervisory powers given to the commissioner, the right of contest and of appeal would lie in cases arising under the section just above quoted; and this construction of the law was indorsed by the supreme court of the United States on appeal in that case, which is reported in 157 U. S. 372 (15 Sup. Ct. 635), where the cases relied upon in support of the strict construction of the statutes are reviewed and discriminated. The supreme court, after reviewing the history of the act, says:

"Subsequently, and on July 4, 1836, 5 Stat. 107, c. 352, Congress, without any repeal of the act of 1830, passed an act to reorganize the General Land Office, the first section of which is as follows:

'That from and after the passage of this act, the executive duties now prescribed, or which may hereafter be prescribed by law, appertaining to the surveying and sale of the public lands of the United States, or in anywise respecting such public lands, and, also, such as relate to private claims of land, and the issuing of patents for all grants of land under the authority of the government of the United States, shall be subject to the supervision and control of the Commissioner of the General Land Office, under the direction of the President of the United States.'"

And the court quoted approvingly *Barnard's Heirs v. Ashley's Heirs,* 18 How. 43, 45, to the effect that:

" The necessity of 'supervision and control,' vested in the Commissioner, acting under the direction of the President, is too manifest to require comment, further than to say that the facts found in this record show that nothing is more easily done than apparently to establish, by *ex parte* affidavits, cultivation and possession of particular quarter sections of land, when the fact is untrue. That the act of 1836 modifies the powers of registers and receivers to the extent of the Commissioner's action in the instances before us, we hold to be true."

Certainly, if the supreme court of the United States would hold that the right of contest and of appeal, which did not exist under § 2263, was given by the act of July 4, 1836, just above quoted, which is purely and merely a right of supervision, they would assuredly hold that the supervisory powers conferred upon the secretary of the interior were sufficient to warrant him in passing upon the merits of the controversy in this case when the testimony was before him, and to reject the application of any petitioner when proof of bad faith was received by him, whether through the formality of an action begun before the receiver and register or otherwise. The court in that case also quoted approvingly from *Knight v. United States Land Association,* 142 U. S. 161 (12 Sup. Ct. 258), where, speaking through Mr. Justice LAMAR, the court said: ·

" The phrase, 'under the direction of the Secretary of the Interior,' as used in these sections of the statutes, is not meaningless, but was intended as an expression in general terms of the power of the Secretary to supervise and control the extensive operations of the land department of which he is the head. It means that, in the important matters relating to the sale and disposition of the public domain, the surveying of private land claims and the issuing of patents thereon, and the administration of

the trusts devolving upon the government, by reason of the laws of Congress or under treaty stipulations, respecting the public domain, the Secretary of the Interior is the supervising agent of the government to do justice to all claimants and preserve the rights of the people of the United States. As was said by the Secretary of the Interior on the application for the recall and cancellation of the patent in this pueblo case (5 Land Dec. 494): 'The statutes in placing the whole business of the Department under the supervision of the Secretary, invest him with authority to review, reverse, amend, annul or affirm all proceedings in the Department having for their ultimate object to secure the alienation of any portion of the public lands, or the adjustment of private claims to lands, with a just regard to the rights of the public and of private parties. Such supervision may be exercised by direct orders or by review on appeals. The mode in which the supervision shall be exercised in the absence of statutory direction may be prescribed by such rules and regulations as the Secretary may adopt. When proceedings affecting titles to lands are before the Department the power of supervision may be exercised by the Secretary, whether these proceedings are called to his attention by formal notice or by appeal. It is sufficient that they are brought to his notice. The rules prescribed are designed to facilitate the Department in the despatch of business, not to defeat the supervision of the Secretary. For example, if, when a patent is about to issue, the Secretary should discover a fatal defect in the proceedings, or that by reason of some newly ascertained fact the patent, if issued, would have to be annulled, and that it would be his duty to ask the Attorney General to institute proceedings for its annulment, it would hardly be seriously contended that the Secretary might not interfere and prevent the execution of the patent. He could not be obliged to sit quietly and allow a proceeding to be consummated, which it would be immediately his duty to ask the Attorney General to take measures to annul. It would not be a sufficient answer against the exercise of his power that no appeal had been taken to him and therefore he was without authority in the matter.'"

And, touching the policy of authority under the established rules and usage of the department, the court said:

"Again, one of the instructions issued by the Land Department to the registers and receivers, and which has been in force for half a century is this: 'Final proof in preemption cases must be made to the satisfaction of the register and receiver, whose decision, as in other cases, is subject to examination and review by this office.' And all these years the practice has been to exercise the power of review thus claimed. * * * While, of course, no practice of a department can nullify an act of Congress, yet such practice, if uniform and long continued, is a matter worthy of consideration in determining its construction. *Heath v. Wallace,* 138 U. S. 573, 582. So many rights, it may be presumed, have been created in reliance upon it that the courts will hesitate to decide that the construction thus practically asserted is erroneous, and so overthrow all the titles depending thereon."

And in further construction of the supervisory section of the law, the court says:

"Indeed, the language of section 2263, upon which alone rests the contention of the plaintiff, is itself suggestive of some control. While it says that 'proof of the settlement and improvement thereby required shall be made to the satisfaction of the register and receiver of the land district,' it also provides that such proof shall be made 'agreeably to such rules as may be prescribed by the Secretary of the Interior.' It may be argued that this only contemplates that the Secretary shall prescribe the mode of procedure, the rules by which testimony shall be received, and does not necessarily interfere with the provision that the proof shall be satisfactory to the register and receiver, or grant to the superior officer a right to revise their determination; and such was the construction placed on the similar section prior to the legislation of 1836. Nevertheless the section contemplates that the proceedings shall not be wholly withdrawn from the control of the Secretary, and implies that they are but part and parcel of the general administrative system for the disposal of the public lands."

We have quoted thus extensively from this case (*Pierce v. Frace,* 157 U. S. 372) for the reason that it is a case taken up from our own state; and for the further reason that the many arguments which are made by the respondents in this case on the question of supervisory power were earnestly urged upon the attention of the supreme court of the United States in that case by counsel, as well as by the dissenting opinion filed.

The supreme court in *Knight v.. United States Land Ass'n,* 142 U. S.161, in addition to the quotation above, after reviewing certain sections of the statutes, said:

" The powers and duties of the Secretary of the Interior were no greater under the acts under consideration in the cases to which we have referred than they are under sections 441, 453 and 2478 of the Revised Statutes. They were practically, and to all intents and purposes, the same. The general words of those sections are not supposed to particularize every minute duty devolving upon the Secretary and every special power bestowed upon him. There must be some latitude for construction. In the language of this court in the late case of *Williams v. U. S.,* 138 U. S. 514, 524: 'It is obvious, it is common knowledge, that in the administration of such large and varied interests as are intrusted to the Land Department, matters not foreseen, equities not anticipated, and which are, therefore, not provided for by express statute, may sometimes arise, and, therefore, that the Secretary of the Interior is given that superintending and supervising power which will enable him, in the face of these unexpected contingencies, to do justice.' See, also, *Lee v. Johnson,* 116 U. S. 48.

It makes no difference whether the appeal is in regular form according to the established rules of the Department, or whether the Secretary on his own motion, knowing that injustice is about to be done by some action of the Commissioner, takes up the case and disposes of it in accordance with law and justice. The Secretary is the guardian of the people of the United States over the public lands. The obligations of his oath of office oblige him to see that the law is carried out, and that none of the public domain

is wasted or is disposed of to a party not entitled to it.  He represents the government, which is a party in interest in every case involving the surveying and disposal of the public lands."

With this broad construction of the statute, it could not be held that the right of the government, through the order of the secretary of the interior to protect public domain from illegal and unworthy applicants, could be thwarted by any informal action of the register and receiver of the local land office; and, on the question of estoppel, the supreme court, in the case of *United States v. Marshall Silver Min. Co.,* 129 U. S. 579 (9 Sup. Ct. 343), speaks as follows:

"All the errors and irregularities which occur in the process of entering and procuring title to the public lands of the United States ought to be corrected within the Land Department, which includes the authority vested in the Secretary of the Interior, so long as there are means of revising the proceedings and correcting these errors.  A party cannot be permitted to remain silent for more than eight years after he has abandoned a contest submitted to the decision of the matter at issue, although it may have been erroneous, and then come forward in a court of equity, after the title has passed from the United States, and seek to correct the errors which may have occurred during the progress of the proceedings in the land office. If the officers of that department of the government have acted within the general scope of their power, and without fraud, the patent which has issued after such proceedings must remain a valid instrument, and the court will not interfere, unless there is such a gross mistake or violation of the law which confers their authority, as to demand a cancellation of the instrument."

On the question of the supervisory power we have not overlooked the many decisions cited by the respondents, but think they are not in point.  It cannot be disputed that, if the department, by rule, has deprived a citizen of a right to which he was entitled under the land laws, the

courts will protect him in that right as readily as they would protect his rights under any other law of the land; and this is the character of the cases that are cited by the respondents and which, we think, have no application to the case at bar. The most noted case, and one which is largely relied upon by the respondents, and which establishes the law of many of the cases discussed, and which is largely quoted from in their brief, is *Johnson v. Towsley,* 13 Wall. 72, but that and kindred cases can readily be distinguished from the case at bar. In that case, Towsley was actually deprived of a pre-emption right which, under the construction given to the law by the court, he was entitled to,—a very serious and palpable deprivation; but in this case there is no claim that the respondents were deprived of any right, and there is no showing or intimation made that the commissioner or the secretary, in the final determination of their rights, was in any way influenced by the fact that the first judgment on the question was concurred in by the receiver. At most, it seems to us that it was a mere informality, which in no way affected the final determination of the rights of the respondents. While it is true that the law as laid down in *Lee v. Johnson,* 116 U. S. 48 (6 Sup. Ct. 249), holds that, if the officers of the department mistake the law applicable to the facts, or misconstrue the statutes, and issue a patent to one not entitled to it, the party wronged can resort to a court of equity to correct the mistake and compel the transfer of the legal title to him as the true owner, for the reason that the court in such a case merely directs that to be done which those officers would have done, if no error of law had been committed, yet it is held that the owner seeking equity to have the holder of a patent of public land declared a trustee for his benefit, on the ground that the patent was improperly issued, must clearly establish that there was a mistake or fraud in issuing the patent,

which affected the decision of the land office, and but for
which he would be entitled to the patent.

We do not think that in this case it is clearly estab-
lished, or established at all, that, if the register had sat in
judgment upon the contest at the local land office, the sec-
retary of the interior would have decided upon the merits
in favor of the respondent Potter. But this question of
the joining of the register and receiver at a hearing has
been before the supreme court of the United States in a
case which went up from this state—or then territory—
viz., *Carr v. Fife*, 156 U. S. 494 (15 Sup. Ct. 487). There
seems to have been some misunderstanding between the
counsel for respondents and the counsel for appellants as
to just what the court did say in that case. This was a
proceeding by Carr to have Sproul, who had obtained a
patent to certain land, declared a trustee for his benefit,
upon the ground that the patent obtained had been im-
properly issued; and the court, after stating the case, said:

"Appellant's first contention is that the tribunal that
tried the case between Carr and Sproul was illegal in re-
spect that instead of the register acting alone, the receiver
took part in the hearing and decision. It is provided, in
section 2297, Revised Statutes, that proof of abandonment
is to be made out to the satisfaction of the register of the
land office, and the record discloses that the evidence in
the present case, on the question of abandonment, was put
in before the register and the receiver, and that the find-
ing was signed by both officers. No objection, however,
seems to have been made while the hearing was in progress
before them, nor was the participation of the receiver made
a ground for exception in the appeal to the Commissioner
of the General Land Office, or in the further appeal to the
Secretary of the Interior. Nor was such participation
complained of by the plaintiff in his bill of complaint, or
called to the attention of the court below. We do not con-
sider it necessary to decide whether in such an inquiry in
the land office the receiver may validly take part, because

4—22 WASH.

we think an objection on that ground is made too late in this court."

Strange as it may be, somewhat of consolation seems to have been administered to both the respondents and the appellants in this case by the announcement of the court above quoted, the respondents insisting that the intimation is that, if the question had been raised in the court below, it would have been deemed sufficient, while the contention of the appellants is that logically the court must have found that jurisdiction obtained, or it could not have tried the action. We think the latter conclusion is undoubtedly correct, for while the supreme court did not undertake to decide whether or not the joining of the receiver and the register in the hearing and decision of the contest are jurisdictional questions, and declined to enter into a discussion of that question, it *did* logically and in effect decide that no want of jurisdiction appeared by reason of such action on the part of the register and receiver. For, while the court placed its decision on that point on the ground of estoppel,—the question having first been raised in that court,—it must have been determined that said action was founded on jurisdiction, for the jurisdictional question could be raised at any stage of the proceedings. If the tribunal which originally tried the case was an illegal tribunal, it could not be made legal by simple acquiescence, but its acts would have been void *ab initio,* and would have been so declared by the court whenever the want of jurisdiction was called to its attention; and in that case, the rights of the respondent resting upon the joint action of the register and receiver, and their jurisdiction being challenged by the appellants, the court must have decided the jurisdictional question in favor of the respondent, before the judgment of the lower court in his favor could have been sustained, or else the court must have gone upon the theory that the secretary of the interior

was qualified, under his supervisory powers, to decide upon the merits of the case, regardless of the action of the register and the receiver.

We see nothing in this case to warrant the conclusion reached by the lower court that the patent issued to the appellant was illegal and void. The judgment will be reversed and the cause remanded, with instructions to the lower court to grant the relief prayed for in the complaint.

GORDON, C. J., and REAVIS, J., concur.